## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY M. RONEY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      CIVIL ACTION NO. 1:20-00465-N |
| | ) |
| KILOLO KIJAKAZI, *Acting* | ) |
| *Commissioner of Social Security*,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony M. Roney brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[2] Upon due consideration of the parties' briefs (Docs. 12, 13) and those portions of the transcript of the administrative record (Doc. 11) relevant to the

---

[1] As has been brought to the Court's attention in other Social Security appeals, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Mar. 30, 2022). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.   *Procedural Background*

Roney filed the subject DIB application with the Social Security Administration ("SSA") on August 7, 2018. After it was initially denied, Roney requested, and on November 18, 2019, received, a hearing on his application with an Administrative Law Judge ("ALJ") of the SSA's Office of Disability Adjudication and Review. On December 12, 2019, the ALJ issued an unfavorable decision on Roney's application, finding him not entitled to benefits. (*See* Doc. 11, PageID.110-129).

The Commissioner's decision on Roney's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on August 25, 2020. (*See id.*, PageID.52-57). Roney subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec.*

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 16, 18).

*Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the

[Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result..."); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts

buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').");  *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

Eligibility for DIB requires that a claimant be disabled, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and

quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ found that Roney met the applicable insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since the alleged disability onset date of May 1, 2017.[8] (Doc. 11, PageID.115). At Step Two, the ALJ found that Roney had the following severe impairments: shoulder disorder, posttraumatic stress disorder (PTSD), and anxiety disorder.[9] (Doc. 11, PageID.115-117). At Step Three,[10] the ALJ found that Roney did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11, PageID.117-119).

---

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

At Step Four,[11] the ALJ determined that Roney had the residual functional capacity (RFC) "to perform medium work as defined in 20 CFR 404.1567(c)[12]

---

[11] At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If

except" that he "can perform a range of simple unskilled work[,] can occasionally interact with the general public[,] can occasionally interact with supervisors[,] can frequently reach overhead with his right upper extremity[,] can frequently climb ramps and stairs[, and] can occasionally climb ladders, ropes, and/or scaffolding." (Doc. 11, PageID.119-127).

Based on the RFC and the testimony of a vocational expert,[13] the ALJ found that Roney was incapable of performing any past relevant work. (Doc. 11, PageID.127-128). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a salvage laborer, dryer attendant, and warehouse worker, that Roney could perform given his RFC, age, education, and work experience. (*Id.*, PageID.128-129). Thus, the ALJ found that Roney was not disabled under the Social Security Act. (*Id.*, PageID.129)

## IV.   *Analysis*

### a.   Other Severe Impairments

Roney first argues that the ALJ erred in not finding his foot and knee

---

someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

impairments "severe" at Step Two. No reversible error has been shown.

The Eleventh Circuit Court of Appeals has recognized that Step Two is merely "a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). *See also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied…"). "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison*, 814 F.2d at 588. Therefore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (unpublished).

An ALJ's harmless errors do not warrant reversal of a final decision, *see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); an "error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) (citing *Diorio*, 721 F.2d at 728). *Accord Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per curiam) (unpublished). Since, again, an ALJ need find only one severe impairment to proceed past Step Two, any error in classifying additional

impairments as non-severe has no effect on the ultimate outcome of the decision, so long as the ALJ, based on substantial evidence, accounts for the "true" limiting effects of those impairments at the later steps of the sequential evaluation. The Eleventh Circuit has repeatedly held that any error in not finding additional severe impairments at Step Two is harmless, so long as the ALJ finds at least one,[14] and considers all of the claimant's medically determinable impairments, both severe and

---

[14] *See e.g.*, *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (per curiam) (unpublished) ("[T]he finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly*, 382 F. App'x at 824–25 ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.").

non-severe, at the later steps of the sequential evaluation.[15]

Here, the ALJ discussed Roney's foot and knee impairments at Step Two, found that they were non-severe, and stated that he had "considered the limiting effects of all of [Roney]'s medically determinable impairments, including those that are not 'severe,' … when assessing" Roney's RFC. (Doc. 11, PageID.115-117).[16]  A review of the ALJ's decision confirms this.[17] Roney makes no argument in his brief

---

[15] *See Schink*, 935 F.3d at 1268 ("Our conclusion that substantial evidence does not support the ALJ's finding that Schink's mental impairments were non-severe … could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence. Here, though, the ALJ's RFC assessment was limited to Schink's physical abilities and impairments and erroneously omitted his mental ones. As a result, we cannot say that the erroneous finding of non-severity was harmless."); *Tuggerson-Brown*, 572 F. App'x at 951 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.").

[16] In arguing that his foot and knee impairments should have been found "severe," Roney relies significantly on disability rating determinations made by the Department of Veterans Affairs. As the ALJ pointed out in his decision (*see* Doc. 11, PageID.120), SSA regulations state that, for applications such as Roney's filed after March 27, 2017,   "a decision by any other governmental agency or a nongovernmental entity about whether  [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules," and therefore "it is not binding on [the Commissioner] and is not [the Commissioner's decision about whether [the claimant is] disabled or blind under [SSA rules[,]" though the Commissioner "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [is] receive[d] as evidence in [a] claim…" 20 C.F.R. § 404.1504. Therefore, the VA's ratings did not control the Social Security ALJ's decision here, and the ALJ expressly discussed the VA medical records at Step Two.

[17] (*See* Doc. 11, PageID.120 ("The claimant alleges a number of impairments, largely mental, but with some physical issues. He alleges PTSD, depression, memory/concentration troubles, related interpersonal issues, a back injury, tinnitus,

as to how the ALJ's decision inadequately accounted for those impairments at the later steps; at oral argument, Roney only vaguely suggested that finding those impairments severe at Step Two might have affected his ability to perform medium work as found at Step Four. The undersigned, however, is not convinced reversible error has been shown in this regard.

### b.    Mental RFC

Claiming that the ALJ's "only mental limitation in the assigned residual functional capacity was a limitation to simple, unskilled work" (Doc. 12, PageID.577), Roney next argues that the ALJ erred by failing to account in the RFC for his finding that Roney had a moderate limitation in the area of concentrating, persisting, or maintaining pace.[18] First, Roney is incorrect that a limitation to

---

injury to the feet, knee injuries, and sleep apnea. He states these combined impairments eventually prevented work as of May 2017…"), PageID.127 ("There is little indication of more than minimal short term back and/or knee compromise. The claimant was apparently not taking even basic naproxen, let alone seeking more progressive therapies, by the end of the record. This and Dr. March's persuasive ratings support that the claimant can perform generally unlimited bending and stooping required for this work. While the claimant states he has difficulty being on his feet, the underlying impairments have been easily managed and their functional effects rarely evident during physical exams.")).

[18] Roney characterizes his second claim of reversible error as follows: "The Administrative Law Judge committed reversible error in violation of Social Security Regulations 20 C.F.R. § 416.945, 20 C.F.R. § 404.1545, and Social Security Ruling 96-8p in that the Administrative Law Judge's residual functional capacity determination at the fifth step of the sequential evaluation process was not supported by substantial evidence…" (Doc. 12, PageID.571, 574). However, the only issues Roney substantively addresses in making this claim are (1) whether the ALJ properly accounted for the moderate limitation in the area of concentrating, persisting, or maintaining pace, and (2) whether the ALJ properly considered the medical opinions of record. To the extent Roney may have raised other sub-issues in this claim of error, they are deemed abandoned. Merely reciting evidence in the

simple, unskilled work was the only mental limitation in the RFC, as the ALJ also limited Roney to occasional interaction with the general public and with supervisors. Second, Roney offers no argument or authority elaborating on this conclusory say-so.[19] Third, the Eleventh Circuit has held that, "when medical

---

administrative record and quoting various Social Security rules and regulations, without any attempt to apply law to facts, is insufficient to raise an issue for the Court's consideration. *See Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) ('A passing reference to an issue in a brief is not enough, and the failure to make arguments ... in support of an issue waives it.').").

[19]     As the Commissioner correctly points out, the ability to concentrate, persist, or maintain pace is a factor that is part of the Psychiatric Review Technique (PRT) used to rate the severity of mental impairments, which is distinct from assessing the RFC. *Compare* 20 C.F.R. § 404.1520a(c), (d)(1)-(2) (explaining how the Commissioner rates the degree of functional limitation in four broad functional areas, including the area of "to concentrate, persist, or maintain pace," to determine the severity of mental impairments) *with* 20 C.F.R. § 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will *then* assess your residual functional capacity." (emphasis added)). *See also* Social Security Ruling 96-8p, 61 FR 34474, 34476, 1996 WL 362207 (July 2, 1996) ("The psychiatric review technique described in 20 CFR 404.1520a ... summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

However, the Eleventh Circuit has rejected the argument that this distinction means the PRT findings play no role in assessing the RFC. *See Winschel*,

evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," a limitation to "only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180. *Accord Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29-30 (11th Cir. 2012) (per curiam) (unpublished); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (per curiam) (unpublished). Here, the ALJ found that a limitation to "simple tasks with occasional public interaction and supportive correction only" was "consistent with the 'B' criteria identified (particularly in concentration and interpersonal skills) and correlates to the well-controlled but persistent anxiety and PTSD noted in generally unremarkable treating events throughout the record." (Doc. 11, PageID.125). Thus, the ALJ adequately accounted for Roney's limitations in concentration, persistence, and pace by finding that the evidence demonstrated he could perform simple, unskilled work in spite of those limitations.

### c.    Medical Opinions

Lastly, Roney challenges the ALJ's rejection of the medical opinions of consultative examining psychologist Joseph Law, Psy.D., and of Michelle Imlay, NP. No reversible error has been shown.

The Social Security regulations applicable to Roney's application define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or

---

631 F.3d at 1180.

more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2).[20] The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20

---

[20] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Roney's. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

C.F.R. § 404.1520c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 404.1520c(b)(3).

With regard to Dr. Law, who examined Roney in October 2019 for purposes of considering an increase in Roney's Veterans Administration disability benefits, the ALJ found his "examination results were somewhat useful but his conclusions

largely unpersuasive…" (Doc. 11, PageID.123). The ALJ correctly noted that many of Dr. Law's conclusions—for instance, that Roney "cannot meet the mental demands of unskilled sedentary employment" (*id.*, PageID.557); is "unemployable" (id., PageID.558); and had "total occupational and social impairment (id., PageID.560)—were "vague" and "out-come determinative" conclusions that were "due no persuasiveness analysis." (*Id.*, PageiD.124). *See* 20 C.F.R. § 404.1520b(c)(3)(i) (for claims filed on or after March 27, 2017, statements on issues reserved to the Commissioner, such as statements that a claimant is "not disabled, blind, able to work, or able to perform regular or continuing work[,]" are "inherently neither valuable nor persuasive").

The ALJ also noted that Dr. Law's description of some of Roney's impairments as "marked," "severe," etc. were "greatly contradicted [by] nearly the whole" of the record preceding his examination, including "objective observations over time, repeated statements of positive response to conservative medication, and lack of more serious outward manifestations of distress like psychosis, hallucinations, aggression, delusion, or paranoia." (Doc. 11, PageID.124). As the ALJ observed, Dr. Law's examination was "completed at the very end of the record" (*id.*), occurring approximately two months before the ALJ issued his decision, and his opinions were "not consistent with [Roney's] basic concentration during many mental status exams and conversations throughout the broader record reaching back into 2017." (*Id.*). Roney does little to address the ALJ's longitudinal view of the record evidence, instead emphasizing that Dr. Law's opinion is "corroborated by

testing" and his based on a personal examination of Roney.[21] As noted previously, "supportability"—that is, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)..." 20 C.F.R. § 404.1520c(c)(1)—is one of the two "the most important factors" in determining a medical opinion's persuasive value. *Id.* § 404.1520c(a), (b)(2). However, the other "most important factor" is "consistency"— that is, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim…" *Id.* § 404.1520c(c)(2). Here, the ALJ acknowledged that Dr. Law's opinion was supported by objective testing and explanations, even finding those results "somewhat useful." However, the ALJ ultimately concluded that any persuasive value provided by this supporting evidence and explanations was diminished by the lack of consistency between the opinion and the rest of the record evidence.

Certainly, the fact that Dr. Law examined Roney provides a basis for giving his opinion some additional persuasive value, *see id.* § 404.1520c(c)(3)(v), though the fact that Dr Law examined him only once makes this factor far from determinative. *Cf. McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (under the old rules for medical opinions, the opinions of one-time examiners are "not entitled to deference"). Moreover, the ALJ appropriately noted that Dr. Law's evaluation was completed for purposes of seeking VA disability benefits, which utilizes

---

[21] While Roney makes conclusory statements that Dr. Law's opinion "is consistent with the medical evidence of record," his arguments in support of Dr. Law's opinion rely exclusively on Dr. Law's own observation and testing, without reference to any of the other objective medical evidence of record. (*See* Doc. 12, PageID.577-580).

different rules for determining disability than the SSA. *See* 20 C.F.R. § 404.1504 ("Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules."). Accordingly, in addition to finding that the record evidence as a whole did not support them, the ALJ appropriately found that the persuasive value of Dr. Law's opinion was further diminished because his articulated limitations were made for purposes of determining disability under a different legal framework than that of the SSA, and therefore might not neatly correspond to SSA standards.[22]

The ALJ's decision indicates that he sufficiently considered Dr. Law's opinion under the required factors, Roney has failed to convince the undersigned that the ALJ's conclusion was based on an irrational view of the record as a whole, and the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ.

---

[22] Roney's brief asserts that "Dr. Law is familiar with the requirements of disability for Social Security" (Doc. 12, PageID.579), but cites no evidence in support. *See* 20 C.F.R. § 404.1520c(c)(5) ("We will consider other factors that tend to support or contradict a medical opinion…, [including] *evidence* showing a medical source has … an understanding of our disability program's policies and evidentiary requirements." (emphasis added)).

*Winschel*, 631 F.3d at 1178. Accordingly, the Court will not disturb the ALJ's decision to give Dr. Law's opinion little persuasive value.

As for NP Imlay's opinion, the ALJ found it "unpersuasive as it is far more restrictive than warranted by the medical evidence of record." (Doc. 11, PageID.125). Roney argues that the ALJ "did not given [sic] any other reason for rejecting" Imlay's opinion, and that the ALJ "was required to point specifically to what made the opinion of Nurse Imlay inconsistent with the other evidence of record." (Doc. 12, PageID.581). However, the ALJ did just that in the paragraph immediately following his statement finding NP Imlay's opinion unpersuasive, explaining:

> The reasoning is unsupportive: ambiguous, vague, redundant, overstated, and inconsistent with NP Imlay's much more moderate observations recorded in the VA treatment notes. The undersigned is tasked with making a longitudinal assessment and cannot extrapolate unsupported acute exacerbations into the residual functional capacity. The broader treatment record, general responsiveness over time to stable medication and basic therapy, and lack of remarkable mental status exams over time lend much more support to the better-articulated State agency opinions.

(Doc. 11, PageID.125).

As with Dr. Law's opinion, Roney fails to meaningfully challenge the ALJ's view of the record as a whole, and his argument that the ALJ failed to offer any explanation for rejecting Imlay's opinion is contradicted by the decision itself.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Roney's application for benefits is therefore due to be **AFFIRMED**.

## V.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Roney's August 7, 2018 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**